**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **ERIN TERRAZZINO,** ) | |
| on behalf of herself and all others similarly ) | |
| situated, ) | |
| ) | Case No. |
| Plaintiff, ) | |
| ) | |
| vs. ) | **JURY TRIAL DEMANDED** |
| ) | |
| **WAL-MART STORES, INC.,** ) | |
| ) | |
| Defendant. ) | |

**CLASS ACTION COMPLAINT**

Plaintiff, Erin Terrazzino, on behalf of herself and others similarly situated, by her attorneys, complains against Defendant Wal-Mart Stores, Inc., as follows:

**NATURE OF THE ACTION**

1.     This is a proposed class action, brought on behalf of all persons who purchased varieties of Wal-Mart Stores, Inc.'s (hereinafter "Walmart") "store brand," "Great Value ALL NATURAL Pita Chips" (hereinafter the "Product" or "Products"), in or from a Walmart store in the United States between March 3, 2012 and the present ("the National Class").

2.     This action is also brought on behalf of a proposed sub-class, composed of all persons who purchased the Product in or from a Walmart store located in Illinois between March 3, 2014 and the present (the "Illinois Sub-Class").

3.     Consumers attribute a wide range of benefits to foods made entirely of natural ingredients.  Consumers perceive all-natural foods to be higher quality, healthier, safer to eat and less damaging to the environment.

4.     While food manufacturers and retailers have sought to capitalize on the fast-

growing market for natural products, now a multi-billion dollar industry, not all manufacturers and retailers truthfully represent the nature and quality of their products.  Some manufacturers and retailers seek to capture a share of the market by touting their products as "All Natural" when in fact, they are not.

5.      "Great Value ALL NATURAL PITA CHIPS" is a Walmart "store-brand" food product which is distributed by Defendant and is sold exclusively by Defendant at both Defendant's website (www.walmart.com) and Walmart stores located in every state in the United States, including Illinois.

6.      Despite the inclusions of the phrase "All Natural" in the name of the Product itself, Defendant has unlawfully, fraudulently, unfairly, misleadingly, and/or deceptively represented that its pita chip products are "All Natural" when they contain non-natural chemically processed ingredients such as Thiamine Mononitrate, Niacin, Folic Acid, and Silicon Dioxide.

7.      Merriam Webster's Learner's Dictionary defines "natural"[1] as an adjective as follows: "existing in nature and not made or caused by people: coming from nature" or "not having any extra substances or chemicals added: not containing anything artificial".

8.      Merriam Webster's Learner's Dictionary defines "synthetic"[2] as an adjective as follows: "made by combining different substances: not natural".

9.      Merriam Webster's Learner's Dictionary defines "artificial"[3] as an adjective as follows: "not natural or real; made, produced, or done to seem like something natural" or "not happening or existing naturally: created or caused by people".

10.      As described by the definitions above, and believed by Plaintiff and other

---

[1] *See* http://www.learnersdictionary.com/definition/natural (last visited February 2017).
[2] *See* http://www.learnersdictionary.com/definition/synthetic (last visited February 2017).
[3] *See* http://www.learnersdictionary.com/definition/artificial (last visited February 2017).

reasonable consumers, the term "natural" does not apply to products that contain artificial or synthetic ingredients, which are not natural by their very definitions.

11.     The term "natural" only applies to those products that contain no natural or synthetic ingredients and consist entirely of ingredients that are only minimally processed. Defendant, however, deceptively used the term "natural" to describe a product containing ingredients that have been either extensively chemically processed or fundamentally altered from their natural state and thus cannot be considered "minimally processed." The use of the term "natural" to describe such product creates consumer confusion and is misleading. Plaintiff alleges that Defendant dishonestly describes its Great Value pita chip products as being "All Natural" when, in fact, they are not.

12.     At all times relevant, Defendant has manufactured, marketed and distributed its Great Value pita chip products with labels that claim the products are "All Natural" when the products are certainly not "All Natural." The addition of synthetic and/or artificial ingredient in Defendant's Great Value pita chip products causes them to not be natural, rendering Defendant's claim false, misleading, and likely to deceive reasonable consumers.

13.     As a result of Wal-Mart Store, Inc.'s deceptive, false and misleading claim on its label, consumers in the United States – including Plaintiff and other members of the proposed National Class and the proposed Illinois Sub-Class – have purchased the Product without being advised that Great Value pita chips products are not "All Natural" as Defendant claims.

14.     Wal-Mart Stores, Inc. has unjustly profited in the lucrative market for natural foods by misleadingly labeling its Great Value pita chips products as "All Natural" and selling them to consumers who sought to purchase products made from ingredients that are naturally occurring and who were willing to choose their brand over their competitors believing their

3

products were "All Natural."

## JURISDICTION AND VENUE

15.     The Court has jurisdiction over this case pursuant to 29 U.S.C. § 1332, because this is a class action, as defined by 28 § 1332(d)(1)(B), in which a member of the putative class is a citizen of a different state than Defendant, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs.

16.     The Court has jurisdiction over the federal claims alleged herein pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States.

17.     The Court has jurisdiction over the state law claims because they form part of the same case or controversy under Article III of the United States Constitution.

18.     Venue is properly placed in the Northern District of Illinois, Eastern Division, through 28 U.S.C. § 1391(b), because a substantial part of the facts, events, or omissions giving rise to Plaintiff's claims occurred in this judicial district.

## PARTIES
### Plaintiff

19.     Plaintiff Erin Terrazzino resides and is domiciled in Cook County, Illinois, which is in this judicial district.

20.     Like all members of the proposed National Class, Plaintiff purchased the Product either online or in a Walmart store located in the United States between March 3, 2012 and the present.  Like all members of the proposed Illinois Sub-Class, Plaintiff purchased the Product either online or at a Walmart store located in Illinois between March 3, 2014 and the present.

21.     Specifically, on or about February 4, 2017 Plaintiff purchased the Product online, and paid approximately $2.00 for the Product.

4

**Defendant**

22.    Defendant Wal-Mart Stores, Inc. ("Walmart") is a corporation which is headquartered at 702 SW 8th Street, Bentonville, Arkansas, 72716.  The uniformly-worded label of the Product states, *inter alia,* that the product was "DISTRIBUTED BY: Wal-Mart Stores, Inc."  Upon information and belief, Defendant Wal-Mart Stores, Inc. is the owner and operator of various Walmart stores throughout the United States, including Illinois.

23.    Defendant Walmart manufactured, distributed, advertised, labeled and sold the Product, determining that each such bag would bear the name "Great Value ALL NATURAL PITA CHIPS" and would list "ALL NATURAL" above the word "Baked" on a stamp on the lower portion of the Products bag.

## FACTUAL ALLEGATIONS

24.    Throughout the period of March 3, 2012, through the present, Defendant systematically marketed and advertised the Products as "All Natural" on the Products packaging.

25.    Defendant prominently placed the words "All Natural" on the front of every package of the Products, as illustrated in the representative image in Figure 1.

Figure 1.



26.     Defendant prominently features the "All Natural" representation on each of the Great Value pita chips in a central location and in all capitalized letters.

27.     Additionally, Defendant prominently features an "All Natural" stamp on each of its Great Value pita chip labels, as illustrated (and magnified) in the representative image in Figure 2.

Figure 2.



28.     By consistently and systematically marketing and advertising the Product as "All Natural" on the Product's packaging throughout the period of March 3, 2012, through the present and throughout the United States, Defendants ensured that all consumers purchasing the Product would be, and all consumers purchasing the Product were, exposed to Defendant's misrepresentation that the Product is "All Natural".

**Defendant's Product Contain Other Synthetic, Artificial and/or Highly Processed Ingredients, All of Which Are Not Natural**

29.     The Product contain a variety of other synthetic, artificial, and or heavily processed, unnatural ingredients, including, enriched wheat flour, niacin, thiamine mononitrate and folic acid.

30.     Enriched Wheat Flour is a highly processed form of wheat flour that has been rendered into an artificial, unnatural ingredient. Enriched wheat flour is formed when wheat seeds are ground to remove the outer layer of the seed and rend a fine light brown or yellowish

flour. During this process, almost all nutrients are removed from the flour, leaving a product that is void of its natural nutritional properties. The flour is then synthetically bleached with chemical additives, such as benzoyl peroxide or chlorine, to give it an artificial, unnatural white color. After bleaching, the flour then has synthetic substances added to it in an attempt to restore nutritional value to the product. Several of these synthetic substances, all of which are included in the Products contain enriched wheat flour, and are described in more detail below:

> a. **Niacin** is a synthetic form of vitamin B3 formed from 3-methylpyridine.

> b. **Thiamine Mononitrate** ($C_{12}H_{17}N_5O_4S$) is a mononitrate salt of thiamine. It is chemically distinct from thiamine (vitamin B1), $C_{12}H_{17}N_5O_4OS$. Thiamine Mononitrate is a synthetic substance prepared from thiamine hydrochloride (also synthetic) by dissolving the hydrochloride salt in alkaline solution followed by precipitation of the nitrate half-salt with stoichiometric amount of nitric acid.[4]

> c. **Folic Acid** is the chemical *N*-[4-[[(2-amino-1, 4-dihydro-4-oxo-6-pteridinyl)methyl]amino]benzoyl]-Lglutamic acid.[5] Folic Acid is synthetically created. Folic acid differs from natural folate in numerous respects, including shelf life and bio-availability. The molecular structure of folic acid is also different from that of natural folate.

31.     Discovery is necessary to uncover the true nature of other ingredients in Defendant's Product.

32.     Despite the presence of all of the above-listed unnatural artificial and synthetic ingredients in Defendant's Product, Defendant markets the Product as "All Natural".

**Defendant Deceptively Markets the Products as "ALL NATURAL" to Induce Consumers, Including Plaintiff and the Class Members, to Purchase the Product**

33.     According to Consumers Union, "Eighty-six percent of consumers expect a 'natural' label to mean processed foods do not contain any artificial ingredients."[6]

---

[4] 21 C.F.R. § 184.1878.
[5] 21 C.F.R. § 172.345(a).
[6] Urvashi Rangan, Comments of Consumers Union on Proposed Guides for Use of Environmental Marketing Claims, 16 C.F.R. Part 260, Notice of the Federal Trade Commission (2010), *available at*

34.     A representation that a product is "All Natural," "natural," and/or "naturals" is material to a reasonable consumer.

35.     Nearly 7 in 10 consumers surveyed by research company Mintel said they were "very" or "somewhat" interested in natural products.[7]

36.     In surveys by Brand Keys consultancy, "natural ingredients" ranks second only to "taste" in influencing consumer purchasing behavior.[8]

37.     Defendant is well aware that claims of food being "All Natural" are material to consumers.

38.     This is evidenced by Defendant's marketing of the Product as "All Natural," on information and belief, from the launch of its existence through the present, prominently on the front label of the Product.

39.     Defendant markets and advertises the Product as "All Natural" to increase sales of the Product.

40.     In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would purchase the Product which is labeled "All Natural" over comparable products not so labeled, furthering Defendant's private interest of increasing sales for its Product and decreasing the sales of products that Defendant's competitors truthfully offer as "All Natural."

**Plaintiff and the Class Members Reasonably Relied on Defendant's Misrepresentations**

41.     Defendant made the deceptive representations on the Product with the intent to induce Plaintiff and other Class members to purchase the Product.

---

https://www.ftc.gov/sites/default/files/documents/public_comments/guides-use-environmental-marketing-claims-project-no.p954501-00289%C2%A0/00289-57072.pdf
[7] Bruce Horovitz, Frito-Lay turns to nature's path, USA TODAY, Dec. 28, 2010 *available at* http://usatoday30.usatoday.com/money/industries/food/2010-12-28-fritonatural28_ST_N.htm
[8] *Id.*

42. Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

43. Defendant's misleading affirmative statements about the "naturalness" of its Product obscured the material facts that Defendant failed to disclose about the unnaturalness of its Product.

44. Consumers frequently rely on food label representations and information in making purchase decisions.

45. Plaintiff and other Class members reasonably relied to their detriment on Defendant's misleading representations and omissions.

46. Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public as they have already deceived and misled Plaintiff and the other Class members.

**Defendant's Wrongful Conduct Caused Plaintiff and the Class Members' Injuries**

47. As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiff and the other Class members in that they:

a. paid a sum of money for the Product that was not as represented;

b. paid for the Product that was unlawfully misbranded and rendered less value;

c. were deprived the benefit of the bargain because the product they purchased was different from what Defendant warranted;

d. were deprived the benefit of the bargain because the product they purchased had less value than what Defendant represented;

e. did not receive a product that measured up to their expectations as created

by Defendant;

f.   ingested a substance that was of a different quality than what Defendant promised; and

g.   were denied the benefit of the beneficial properties of the natural foods promised.

48.   Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the other Class members would not have been injured.

49.   Plaintiff paid for a product that was "All Natural", but received a product that was not "All Natural".  The product Plaintiff and the other Class members received were worth less than the product for which they paid.

50.   Defendant's advertising for the Product was and is false, misleading, and/or likely to deceive reasonable consumers.  Therefore, the Product is misbranded and worth less than what Plaintiff and members of the Class paid for them, and/or are not what Plaintiff and members of the Class reasonably intended to receive.

## CLASS ACTION ALLEGATIONS

51.   Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23, on behalf of a National Class defined as:

> **All persons who, between March 3, 2012 and the present purchased one or more bags of "Great Value All Natural PITA CHIPS" at a Walmart store located in the United States or online at www.walmart.com.**

52.   Plaintiff also brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of all Illinois Sub-Class defined as:

> **All persons who, between March 3, 2014 and the present purchased one or more bags of "Great Value All Natural PITA CHIPS" at a Walmart store located in Illinois or online at www.walmart.com while in Illinois.**

53.   The members of the class and sub-class for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

54.    Upon information and belief, the proposed National Class and the proposed Illinois Sub-Class are each composed of many thousands of persons.

55.    No violations alleged in this complaint are a result of any oral communications or individualized interaction of any kind between class members and Defendant.

56.    Rather, all claims in this matter arise from the identical, false, written affirmative statements on the Product label as outlined in detail herein.

57.    There are common questions of law and fact affecting the rights of all National Class members and Illinois Sub-Class members, including, *inter alia*, the following:

   a.   Whether the Product is All-Natural;

   b.   Whether Defendant's act in labeling the Product "ALL NATURAL" was a false, affirmative statement of fact;

   c.   Whether Defendant was aware that the Product contained unnatural artificial and synthetic ingredients; and

   d.   The date Defendant became aware that the Product contained unnatural artificial and synthetic ingredients.

58.    In addition, there are common questions of law and fact affecting the rights of all Illinois Sub-Class members, including, *inter alia*, the following:

   a.   Whether Defendant's actions, as outlined herein, violated the Illinois Consumer Fraud and Deceptive Business Practices Act; 815 ILCS 505/1 *et seq.*;

   b.   Whether, by the facts alleged herein, Defendant breached an express or implied warranty under Illinois common law;

   c.   Whether an implied contract for the purchase of goods existed between Defendant and each member of the Illinois Sub-Class under Illinois common law; and

   d.   Whether Defendant's actions, as outlined herein, breached that implied contract and/or the implied covenant of good faith and fair dealing that was part of such contract under Illinois common law.

59.    Plaintiff is a member of the class and sub-class she seeks to represent.

60.     The claims of Plaintiff are not only typical of all class and sub-class members, they are identical.

61.     All claims of Plaintiff and the class and sub-class arise from the same identical, false, written statement of affirmative fact on the Product label as described herein.

62.     All claims of Plaintiff and the class and sub-class are based on the same legal theories.

63.     Plaintiff has no interest antagonistic to, or in conflict with, the class or sub-class.

64.     Plaintiff will thoroughly and adequately protect the interests of the class and sub-class, having retained qualified and competent legal counsel to represent herself and the class and sub-class.

65.     Defendant has acted and refused to act on grounds generally applicable to the class and sub-class, thereby making appropriate injunctive and declaratory relief for the class as a whole.

66.     The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

67.     A class action is the only practical, available method for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member were less than $4.00 per bag of the Product purchased and, as such, individual actions are not economically feasible.

68.     Common questions will predominate, and there will be no unusual manageability issues.

## COUNT I
## BREACH OF EXPRESS WARRANTY
## On Behalf of the National Class

69.     Plaintiff re-alleges and incorporates by reference paragraphs 1-68 of this complaint as if set forth fully herein.

70.     Plaintiff brings this claim individually and on behalf of the National Class. Plaintiff and each member of the National Class formed a contract with Defendant at the time Plaintiff and the other members of the National Class purchased Defendant's Product.

71.     Defendant sold the Product in its regular course of business.

72.     Plaintiff and the members of the National Class purchased the Product.

73.     The written, capitalized and uniformly-worded label on the Product, along with the stamped written label on the Product constituted an express warranty provided to all purchasers of the Product under the law of each state in the United States in which the Product was sold.

74.     Defendant's written affirmation of fact, promises, and/or descriptions on the Product label were part of that express warranty under the laws of each state in the United States in which the Product was sold.

75.     By the acts alleged herein, Defendant breached that warranty because the Product cannot and does not conform to the properties Defendant represented on the label.

76.     All conditions precedent to seeking liability under this claim for breach of warranty have been performed by or on behalf of Plaintiff and the members of the National Class in terms of paying for the goods at issue.

77.     Defendant had actual and/or constructive notice of the false labeling information and to date has taken no action to remedy its breaches of warranty.

13

78.     By placing the Product into the stream of commerce, by operation of law in each state in the United States, Defendant also impliedly warranted to Plaintiff and the members of the National Class that the Product was accurately labeled in conformance with the law.

79.     Defendant's breaches of warranty have caused Plaintiff and the members of the National Class to suffer injuries by paying for falsely labeled products. As a direct and proximate result of Defendant's breaches of warranty, Plaintiff and the members of the National Class have suffered damages and continue to suffer damages, including economic damages in terms of the difference between the value of the Product as promised and the value of the Product as delivered.

80.     As a result of the breach of these warranties, Plaintiff and the members of the National Class are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and/or other relief as deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain.

**COUNT II**
**(In the Alternative to Count I)**
**UNJUST ENRICHMENT**
**On Behalf of the National Class**

81.     Plaintiff re-alleges and incorporates by reference paragraphs 1-68 of this complaint as if set forth fully herein.

82.     Plaintiff brings this claim individually and on behalf of the National Class.

83.     Plaintiff and the members of the National Class have conferred substantial benefits on Defendant by purchasing the Product, and Defendant has knowingly and willingly accepted and enjoyed these benefits.

84.     Defendant received these benefits as a result of its uniform deceptive marketing of the Product.

14

85.     Defendant either knew or should have known that the payments rendered by Plaintiff and the members of the National Class were given and received with the expectation that the Product would be as represented and warranted, free of any artificial or synthetic ingredients.

86.     Under the common law of unjust enrichment in every state in the United States where the Product was sold, it would be inequitable for Defendant to retain the benefit of payments under these circumstances and such retention constitutes unjust enrichment.

87.     Under the law of every state in the United States where the Product was sold, both law and equity demand disgorgement of Defendant's ill-gotten gains.

88.     As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiff and the members of the National Class are entitled to restitution from Defendant and institution of a constructive trust disgorging all profits, benefits, and other compensation obtained by Defendant.

**COUNT III**
**ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT**
**815 ILCS 505/1 *et seq.***
**On Behalf of the Illinois Sub-Class**

89.     Plaintiff re-alleges and incorporates by reference paragraphs 1-68 of this complaint as if set forth fully herein.

90.     Plaintiff asserts this claim on behalf of herself and on behalf of the Illinois Sub-Class, pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* (the "ICFA").

91.     Section 2 of the ICFA provides in pertinent part:

Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense,

false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of any such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act," approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act. 815 ILCS 505/2 (footnotes omitted).

92.     Under the ICFA, the term "consumer" means "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 ILCS 505/1(e).

93.     Under the ICFA, the terms "trade" and "commerce" mean "the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this State." 815 ILCS 505/1(f).

94.     Plaintiff and the Illinois Sub-Class members have standing to assert this claim because they are "consumers" within the meaning of the IFCA, and Defendant addresses its practices to the market generally and otherwise implicates consumer protection concerns. At all relevant times, Defendant conducted "trade" and "commerce" within the meaning of 815 ILCS 505/1(f).

95.     As fully alleged above, by advertising, marketing, distributing, and/or selling the Products with claims that they were "All Natural" to Plaintiff and the Illinois Sub-Class members, Defendant violated the ICFA by engaging in, and it continues to violate the ICFA by continuing to engage in, unfair and deceptive acts or practices, since the Products, which are made from artificial and synthetic ingredients, are not natural.

16

96.     Defendant's unlawful, unfair and/or deceptive practices described herein are continuing in nature and are widespread practices.

97.     Defendant's actions, which were willful and wanton, constitute intentional violations of the ICFA.

98.     Defendant intended that Plaintiff and the Illinois Sub-Class members rely on the unfair and deceptive acts and omissions alleged herein so that they would buy, and/or continue to buy, Defendant's Products.

99.     Plaintiff and the Illinois Sub-Class members believed Defendant's representations that the Product was "All Natural."  Plaintiff and the Illinois Sub-Class members would not have purchased the Product had they known the Product was not, in fact, "All Natural" because they contained artificial and synthetic ingredients.

100.    Plaintiff and the Illinois Sub-Class members were injured in fact and lost money as a result of Defendant's conduct of improperly describing the Product as "All Natural." Plaintiff and the Illinois Sub-Class members paid for a product that was "All Natural", but did not receive such product.

101.    The product Plaintiff and the Illinois Sub-Class members received were worth less than the product for which they paid.  Plaintiff and the Illinois Sub-Class members paid for the Product on account of Defendant's misrepresentations that the Product was "All Natural."

102.    Plaintiff and the Illinois Sub-Class members seek to enjoin such unfair and deceptive acts and practices as described above.  Each of the Illinois Sub-Class members will be irreparably harmed unless the Court enjoins Defendant's unlawful actions, in that Plaintiff and the Illinois Sub-Class members will continue to be unable to rely on Defendant's representations that the Product is "All Natural."

103.    Plaintiff and the Illinois Sub-Class members seek declaratory relief, restitution for monies wrongfully obtained, disgorgement of ill-gotten revenues and/or profits, injunctive relief, enjoining Defendant from continuing to disseminate its false and misleading statements, and other relief allowable under the ICFA.

104.    Defendant's material misrepresentations and omissions described above have caused harm to Plaintiff and other members of the Illinois Sub-Class.

105.    Plaintiff and the other members of the Illinois Sub-Class have suffered injury in fact and lost money as a result of these unlawful, unfair, and fraudulent practices.

WHEREFORE, Plaintiff respectfully asks this Court to:

a. Certify the proposed National Class and the Illinois Sub-Class as class actions pursuant to Fed. R. Civ. P 23, and appoint Plaintiff as the class representative and her undersigned counsel as class counsel;

b. Enter an order for injunctive and declaratory relief as described herein, including but not limited to a corrective advertising campaign;

c. Enter judgment in favor of each class member for damages suffered as a result of the conduct alleged herein, to include interest and pre-judgment interest;

d. Award Plaintiff reasonable attorneys' fees and costs;

e. Award Plaintiff and the class treble damages; and

f. Grant such other and further legal and equitable relief as the Court deems just and equitable.


Dated:  March 3, 2017

Respectfully submitted,


/s/  __Kasif Khowaja_____
        *One of the Attorneys for Plaintiff*

18

Kasif Khowaja
**The Khowaja Law Firm, LLC**
70 East Lake St. Suite 1220
Chicago IL 60601
312-356-3200 -T
312-386-5800 -F
kasif@khowajalaw.com

James X. Bormes
Catherine P. Sons
**Law Office of James X. Bormes, P.C.**
8 South Michigan Avenue
Suite 2600
Chicago, IL 60603
312-201-0575-T
312-332-0600-F
jxbormes@bormeslaw.com
cpsons@bormeslaw.com