IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ERIN TERRAZZINO, on behalf of herself and others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>WAL-MART STORES, INC.,<br><br>        Defendant. | No. 17-cv-01731<br><br>Judge Andrea R. Wood |

## MEMORANDUM OPINION AND ORDER

Plaintiff Erin Terrazzino purchased a bag of Great Value All Natural Pita Chips ("Pita Chips") from Defendant Wal-Mart Stores, Inc.'s ("Walmart") website. Terrazzino alleges that despite the fact that the Pita Chips were prominently branded as "All Natural," the product contained a variety of synthetic, artificial, and heavily-processed ingredients. Consequently, Terrazzino has filed this lawsuit alleging that Walmart's representation of the Pita Chips as "All Natural" was false, misleading, and deceptive. Presently before the Court is Walmart's motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), and 12(b)(6). (Dkt. No. 13). For the reasons explained below, Walmart's motion to dismiss is granted in part and denied in part.

## BACKGROUND

As alleged in the Complaint, Walmart manufactured, distributed, advertised, labeled, and sold the Pita Chips. (Compl. ¶ 23, Dkt. No. 1.) The Pita Chips' packaging prominently displayed the words "All Natural" in all capital letters on the front center of the bag. (*Id.* ¶ 26.) The package also had a stamp on the bottom-right side of the bag that said "All Natural" and

"Cholesterol Free" around the edge and "baked" in the center. (*Id.* ¶ 37 & Fig. 2.) The image below shows the packaging's general appearance:



Despite this advertising, the Pita Chips actually contained a variety of synthetic, artificial, and heavily-processed ingredients, including enriched wheat flour, which contains niacin, thiamine mononitrate, and folic acid. (*Id.* ¶ 29.) Enriched flour is formed when wheat seeds are ground to remove the outer layer of the seed, as well as almost all nutrients. The flour is then synthetically bleached with chemical additives to give it a white color. After bleaching, synthetic substances (including niacin, thiamine mononitrate, and folic acid) are added to the flour to restore nutritional value to the Pita Chips. (*Id.* ¶ 30.)

On February 4, 2017, Terrazzino purchased the Pita Chips through Walmart's online store, paying approximately $2.00 for the bag. (*Id.* ¶ 21.) On the webpage where the Pita Chips

were sold, there was an "about this item" section, which listed the following ingredients: "Enriched Wheat Flour (Wheat Flour, Niacin, Reduced Iron, Thiamine Mononitrate, Riboflavin, Folic Acid), Sunflower Oil, Sea Salt, Yeast, Oat Fiber, Sugar, Wheat Starch, Ascorbic Acid, Silicon Dioxide." (Def.'s Mot. to Dismiss, Ex. 1 at 4 of 12, Dkt. No. 58.) To view these ingredients, however, a user had to go through one of two processes: the user could either scroll three pages of web content to the "about this item" tab, and then click on the "read more" tab to find the ingredients (Resp. to Mot. to Dismiss, Ex. A, Dkt. No. 21); or the user could click on an earlier "read more" tab, which would take her straight to the "about this item" tab, and then click on a second "read more" tab to find the ingredients. (*Id.* Ex. B.)

Terrazzino has brought the present class-action lawsuit, alleging that Walmart's representation that the Pita Chips were "All Natural" was false, misleading, and deceptive. She seeks to represent the following classes:

- The National Class: All persons who, between March 3, 2012 and present purchased one or more bags of "Great Value All Natural PITA CHIPS" at a Walmart store located in the United States or online at www.walmart.com.

- The Illinois Class: All persons who, between March 3, 2014 and present purchased one or more bags of "Great Value All Natural PITA CHIPS" at a Walmart store located in Illinois or online at www.walmart.com while in Illinois.

(Compl. ¶¶ 51, 52.) Terrazzino's complaint alleges common law claims for breach of express warranty (Count I) and unjust enrichment (Count II) on behalf of the National Class, and violations of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") on behalf of the Illinois Class (Count III).

## DISCUSSION

### I. Rule 12(b)(1) Motion to Dismiss for Lack of Standing

Walmart first argues that Terrazzino lacks standing to assert claims premised on the laws of states other than Illinois and therefore any such claims must be dismissed. Specifically, Walmart contends that because Terrazzino claims no injuries in any state other than Illinois, she has no standing to pursue statutory causes of action under the laws of any other state. Terrazzino counters that this argument is premature.

"[T]he question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or particular issues." *Apex v. Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009) (quoting *Perry v. Vill. of Arlington Heights*, 186 F.3d 826, 829 (7th Cir. 1999)). The plaintiff bears the burden of proof as to standing. *Kathrein v. City of Evanston, Ill.*, 636 F.3d 906, 914 (7th Cir. 2011). To establish standing, a plaintiff must demonstrate: "(1) that [the plaintiff has] suffered an injury in fact (2) that is fairly traceable to the action of the defendant and (3) that will likely be redressed with a favorable decision." *Id.* at 914 (quoting *Books v. City of Elkhart, Ind.*, 235 F.3d 292, 299 (7th Cir. 2000)). To demonstrate an injury in fact, the plaintiff must allege that she "suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

With respect to the timing of standing motions in class actions, courts in this District are split on whether standing issues should be postponed until after class certification. This split stems from the interpretation of two Supreme Court cases: *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997), and *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999). In *Amchem*, the

Supreme Court considered whether a class should be certified for settlement purposes and held that dispositive class certification issues were "logically antecedent to the existence of any Article III issues." 521 U.S. at 612. Notably, the Supreme Court agreed with the Third Circuit's decision not to reach Article III standing issues when standing was only at issue because of the plaintiff's proposed class certification. *Id.* Similarly, in *Ortiz*, the Supreme Court held that while courts generally must resolve Article III standing concerns before reaching the merits of a case, Federal Rule of Civil Procedure 23 class certification issues should be assessed first when they are logically antecedent to Article III concerns. 527 U.S. at 831. Both *Amchem* and *Ortiz* concerned certification of settlement classes in asbestos litigation, and in both cases the Supreme Court made its decision based on class certification issues. *Amchem*, 521 U.S. at 628–29; *Ortiz*, 527 U.S. at 864–65. Thus, in neither case did the Supreme Court substantively address standing issues.

In *Payton v. County of Kane*, 308 F.3d 673 (7th Cir. 2002), the Seventh Circuit followed the Supreme Court's guidance and addressed class certification prior to standing issues. *Id.* at 680–81. Specifically, the Seventh Circuit began its "analysis with the question of class certification, mindful of the Supreme Court's directive to consider issues of class certification prior to issues of standing." *Id.* at 680. One difference between *Payton* and Terrazzino's case, however, is the fact that the class representatives in *Payton* were all personally injured by the operation of the same statute that caused injuries to all other members of the proposed class. *Id.* at 682. Here, in contrast, Terrazzino brings claims not just under the laws of the state in which she resides and was injured—Illinois—but also under the laws of every other state. Whether a court may postpone a standing analysis until after class certification when the plaintiff seeks to represent nationwide class members, even when she only has a connection to one state, is a

5

question that has divided courts in this District. *See In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 09-cv-03690, 2015 WL 3988488, at *25 (N.D. Ill. June 29, 2015) (where the defendant argued that the plaintiff only had standing to raise claims under New York law, not the laws of any of the other states named in her class action complaint, holding that because a ruling on the plaintiff's standing did not depend on the standing of proposed class members, the class certification issue was not logically antecedent to the standing issue); *c.f. McDonnell v. Nature's Way Prod., LLC*, No. 16-cv-5011, 2017 WL 1149336, at *5 (N.D. Ill. Mar. 28, 2017) ("Having considered both interpretations, the Court agrees with the cases finding the standing issue to be premature at this stage. [Plaintiff] has Article III standing to pursue her claim under Illinois law, having allegedly suffered injuries caused by [defendant]. Her . . . standing issues therefore arise from [her] attempt to represent the multistate class, making class certification issues logically antecedent to standing concerns.") (internal quotation marks and citations omitted).

It is unclear how *Ortiz* and *Amchem* apply here since Terrazzino has not yet affirmatively sought certification of a class. Nonetheless, the Court believes that Walmart has presented a true standing question. Terrazzino claims that because of Walmart's false, misleading, and deceptive representations and omissions, she was injured in a number of ways, including being deprived of the benefit of the bargain because the product she purchased was different from what Walmart represented. Terrazzino thus has alleged a concrete and particularized injury, and she has constitutional standing to pursue her claim. The "standing" issues highlighted by Walmart are solely the product of Terrazzino's attempt to represent a national class. What Walmart really contests is Terrazzino's ability to represent the class, and that issue is best addressed at the class certification stage. The Court therefore denies the motion to dismiss for lack of standing.

6

## II.      Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

In considering a Rule 12(b)(6) motion to dismiss, the Court accepts all well-pleaded facts as true, draws all inferences in the plaintiff's favor, and construes all facts in the light most favorable to the plaintiff. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016)). The Court may also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in a plaintiff's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013). Where a complaint attaches only part of a relevant document, the court may consider the entire document if the defendant appends it to its motion. *See Rosenblum v. Travelbyus.com*, 299 F.3d 657, 661–62 (7th Cir. 2002).

Federal Rule of Civil Procedure 8(a) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion, the short and plain statement must meet two threshold requirements. First, the complaint's factual allegations must be sufficient to give the defendant fair notice of the claim and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Second, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). While a complaint need not contain detailed factual allegations, there "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]'

7

devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (alterations in original).

Claims sounding in fraud are subject to the heightened pleading requirement of Rule 9(b). *See* Fed. R. Civ. P. 9(b). Rule 9(b) requires a pleading to "state with particularity the circumstances constituting fraud." *Id.* While the precise level of particularity required under Rule 9(b) depends upon the facts of the case, the rule "ordinarily requires describing the who, what, when, where and how of the fraud." *Camasta v. Jos. A. Bank Clothiers Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (quoting *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011)). "One of the purposes of the particularity and specificity required under Rule 9(b) is 'to force the plaintiff to do more than the usual investigation before filing his complaint.'" *Id.* (quoting *Ackerman v. Northwestern Mutual Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999)).

    **A.**    **ICFA Claim**

To state an ICFA claim, Terrazzino must allege: (1) a deceptive act or practice by Walmart, (2) that the deceptive act or practice occurred in the course of conduct involving trade or commerce, (3) that Walmart intended that Terrazzino rely on the deception, and (4) that the deception caused Terrazzino actual damages. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). Because Terrazzino's IFCA claim sounds in fraud, she must meet Rule 9(b)'s heightened pleading standard. *See Camasta*, 761 F.3d at 736. As explained below, the Court is unpersuaded by Walmart's arguments for dismissal of the ICFA claim and therefore its motion to dismiss that claim is denied.

1. **Deceptive Act or Practice**

Walmart argues that there was no deception here because the Pita Chips' label disclosed all of the ingredients about which Terrazzino complains—specifically, "enriched wheat flour" and its constituent parts. Walmart points to *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751 (N.D. Ill. 2015), as instructive on this point. In *Ibarrola*, the plaintiff alleged that the defendant's product packaging was deceptive because it stated that the product contained "no refined sugars" when in fact the product contained evaporated cane juice and molasses. *Id.* at 755. The *Ibarrola* court held that to arrive at a reasonable understanding of "no refined sugars," the plaintiff should have considered the ingredient label on the back of the package, which notified the consumer that the product contained evaporated cane juice and molasses. *Id.* at 759.

Although Walmart argues that *Ibarrola* is similar to the case presently before this Court, it is readily distinguishable. Significantly, the plaintiffs in the two cases absorbed different information prior to purchasing and consuming the products. In *Ibarrola*, the plaintiff admitted that she purchased the product in person, read the entire product label before purchasing it, and in doing so learned that the product contained evaporated cane juice and molasses. *Id.* at 755, 759. Here, in contrast, Terrazzino does not allege that she read the ingredient label. Further, Terrazzino purchased the Pita Chips through Walmart's website, rather than at a physical store. Terrazzino claims in her response to the motion to dismiss that it was not only possible to purchase the Pita Chips without reading the ingredient lists, but that Walmart made it fairly inconvenient and even arduous to access the ingredient list. (At the pleading stage, the Court has no basis to doubt this assertion.) In contrast, the plaintiff in *Ibarrola* only had to flip over the package to learn more about the ingredients contained in the product. As the ingredients were arguably much more difficult to ascertain here than in *Ibarrola* and Terrazzino has not alleged

9

that she actually read the ingredient label for the Pita Chips, *Ibarrola's* reasoning has little application here.

Alternatively, Walmart asks the Court to apply the reasoning employed by the district court in *Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754 (W.D. Mo. 2015). In *Kelly*, the plaintiff alleged that she purchased chips which were falsely labeled as "All Natural" and containing "no preservatives," when in fact the chips contained numerous artificial and synthetic ingredients. *Id.* at 756–57, 759. The *Kelly* court held that "the federally-compliant ingredient label on the back of the Chips defeats Plaintiff's claims that the Chips' labeling constitutes an unlawful practice," and her contention that she was "deceived by Defendants' labeling is contradicted by the full disclosure of the challenged ingredients by Defendants." *Id.* at 762. This Court, however, agrees with the numerous others that have rejected the "ingredient list" defense. *See York v. Andalou Nats., Inc.*, No. 16-cv-00894, 2016 WL 7157555, at *3 (S.D. Ill. Dec. 8, 2016) (summarizing opinions). As the Ninth Circuit has explained, the FDA does not require "an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception." *Williams v. Gerber Products Co.*, 552 F.3d 934, 939 (9th Cir. 2008). The Court declines to dismiss Terrazzino's complaint simply because an ingredient list was included on the website selling the product.

### 2. Actual Damages

Walmart also contends that Terrazzino's ICFA claim fails because she has not plausibly alleged an injury. To plead an ICFA claim adequately, a plaintiff must allege actual damages. The "actual damage element of a private ICFA action requires that the plaintiff suffer 'actual pecuniary loss.'" *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010) (quoting *Mulligan v.*

10

*QVC, Inc.*, 888 N.E.2d 1190, 1197 (Ill. App. Ct. 2008)). "[A]ctual loss may occur if the seller's deception deprives the plaintiff of 'the benefit of her bargain' by causing her to pay 'more than the actual value of the [product].'" *Id.* (quoting *Mulligan*, 888 N.E.2d at 1197–98). Terrazzino here alleges that the Pita Chips were worth less than the product for which she paid—*i.e.*, "All Natural" pita chips. Additionally, Terrazzino claims that she would not have purchased the Pita Chips had she known that they were not "All Natural" as advertised. Nonetheless, according to Walmart, Terrazzino's claim fails because she does not allege facts suggesting that the Pita Chips were worth less than the $2.00 she paid for them or that she would have purchased different chips for a lower price. As a result, Walmart contends, Terrazzino's damages allegations are speculative and conclusory.

Walmart cites *Camasta*, 761 F.3d 732, as authoritative on this damages issue. In *Camasta*, the Seventh Circuit held that the plaintiff's assertion that he "could have shopped around and obtained a better price in the marketplace" was insufficient to support a claim of actual damages under the ICFA. *Id.* at 740 (internal quotation marks omitted). The Seventh Circuit stated that the plaintiff was "required to at least conduct a minimal precomplaint investigation to gather sufficient factual information to support his fraud claim." *Id.* Specifically, the Seventh Circuit suggested that the plaintiff could have gone to other stores "to discover whether he could have found a better price for similar shirts elsewhere." *Id.* Importantly, however, the plaintiff in *Camasta* argued that he was deceived by the product's advertised "sale prices," which apparently were just normal or regular retail prices being promoted as a temporary price reduction. *Id.* at 739. Thus, in *Camasta*, the plaintiff's deception case rested on misrepresentation of the product's price.

11

Here, in contrast, Terrazzino's case rests on a misrepresentation regarding the quality of the product she purchased. Terrazzino does not need to rely solely on price to demonstrate that the product was inferior—instead she can, and does, rely on the fact that the product was not "All Natural." Because *Camasta* concern comparative price deception, and this case involves product quality deception, the standard for alleging damages differs.[1] Terrazzino was not required to shop around for other pita chips in order to prove that the product was not worth what she paid for it. Instead, Terrazzino's allegation that she paid more for the Pita Chips because they were labeled as "All Natural," and further that she would not have bought the Pita Chips if she had known that they were not, in fact, "All Natural," is sufficient to allege actual damages. *See Block v. Lifeway Foods, Inc.*, No. 17-cv-01717, 2017 WL 3895565, at *5 (N.D. Ill. Sept. 6, 2017) (finding that the plaintiff adequately alleged actual damage where he claimed he would not have bought the product if he had known it was not in fact 99% lactose free and that the defendant charged more for the product because of the misrepresentation); *McDonnell v. Nature's Way Prod., LLC*, No. 16-cv-05011, 2017 WL 4864910, at *2 (N.D. Ill. Oct. 26, 2017) (finding the plaintiff's allegation that she paid more for the products than they were actually worth and would not have purchased them if she knew they contained foreign-sourced vitamins sufficient to allege actual damages).

### 3. Proximate Cause

Walmart also argues that the ICFA claim fails because Terrazzino has not adequately alleged causation. "[A] private cause of action under ICFA requires a showing of proximate

---

[1] The same is true for the other comparative price deception cases relied on by Walmart. *See Mulligan v. QVC, Inc.*, 888 N.E.2d 1190, 1196 (Ill. App. Ct. 2008) ("Mulligan maintains that she has presented a genuine issue of fact to support a deceptive comparative pricing practice based upon Harders' testimony that the retail values for the four specific items Mulligan purchased were significantly lower than QVC's stated retail values."); *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010) ("*Mulligan* involved comparative price deception similar to that alleged here.").

causation." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514–15 (7th Cir. 2006). "[T]o properly plead the element of proximate causation in a private cause of action for deceptive advertising brought under the [ICFA], a plaintiff must allege that he was, in some manner, deceived." *Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 155 (Ill. 2002). Further, a plaintiff must allege that she was damaged by that deception. *Oshana*, 472 F.3d at 513–14. Notably, "the required allegation of proximate cause is minimal since that determination is best left to the trier of fact." *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 595 (Ill. 1996).

Terrazzino has alleged that Walmart's labeling of the Pita Chips as "All Natural" was deceptive because the Pita Chips were not, in fact, "All Natural." Terrazzino further has alleged that this deceptive act induced her to pay more for the chips than they were worth and that she would not have bought the chips but for the deceptive act. This is sufficient to plead the element of proximate cause.

### 4. Whether the ICFA Claim is Actually a Restated Breach of Contract Claim

Finally, Walmart argues that Terrazzino's ICFA claim fails because it is no more than a breach of contract claim and "[a] breach of a contractual promise, without more, is not actionable under the [ICFA]." *Avery v. State Farm Mut. Auto Ins. Co.*, 835 N.E.2d 801, 844 (Ill. 2005). For example, in *Greenberger v. GEICO General Insurance Co.*, 631 F.3d 392 (7th Cir. 2011), the plaintiff alleged that GEICO systematically omitted necessary repairs from its collision-damage estimates in violation of its contractual promise to restore the policyholder's vehicle to pre-loss condition. *Id.* at 394–95. The Seventh Circuit affirmed dismissal of the ICFA claim, holding that "[w]hen allegations of consumer fraud arise in a contractual setting, the plaintiff must prove that the defendant engaged in deceptive acts or practices distinct form any underlying breach of contract." *Id.* at 399 (citation omitted). The Seventh Circuit explained that it was not the

13

existence of the contract itself that defeated the plaintiff's consumer fraud claim, "but rather his failure to allege any unfair or deceptive conduct distinct from the alleged breach of a contractual promise." *Id.*

Although an ICFA claim must include more than simply breach-of-contract allegations, "a promise to perform future conduct can give rise to a claim of fraud 'if the false promise or representation of future conduct is alleged to be the scheme employed to accomplish the fraud.'" *Block v. Lifeway Foods, Inc.*, No. 17 C 1717, 2017 WL 3895565, at *4 (N.D. Ill. Sept. 6, 2017) (quoting *Unicus Performance Training, LLC v. Johnson*, 2011 IL App (1st) 110204-U, ¶ 24 (Ill. App. Ct. Dec. 14, 2011)). Terrazzino has alleged that Walmart falsely labeled the Pita Chips as "All Natural" to increase sales of the product. (Compl. ¶¶ 39, 40.) According to Terrazzino, Walmart was well aware that claims of "All Natural" are material to consumers. (*Id.* ¶ 37.) Thus, Walmart "knew and intended that consumers would purchase the [Pita Chips] which [were] labeled 'All Natural' over comparable products not so labeled, furthering [Walmart's] interest of increasing" its pita chip sales and decreasing sales of other comparable products. (*Id.* ¶ 40.) Put another way, according to the complaint, Walmart's labeling of the Pita Chips as "All Natural" was more than just a failure to perform, it was the scheme through which Walmart achieved its fraud. These allegations demonstrate that Terrazzino's ICFA claim is more than just a repackaged breach of contract claim.

### B.    Breach of Warranty Claim

Walmart also contends that Terrazzino fails to plead a breach of warranty claim adequately because she has not alleged pre-suit notice. Under Section 2-607 of the Uniform Commercial Code ("UCC"), a buyer alleging a breach of warranty must notify the seller of the breach "within a reasonable time after she discovers" it or else she is "barred from any remedy."

810 ILCS 5/2–607(3)(a). The notice must, at a minimum, let "the seller know that the particular transaction is still troublesome and must be watched." *Connick*, 675 N.E.2d at 589 (internal quotation marks omitted).

Terrazzino has not alleged that she provided direct pre-suit notice. This does not necessarily doom Terrazzino's claim, however. Pre-suit notice is not required in two circumstances: "(1) when the seller has actual knowledge of the defect of the particular product; or (2) the seller is deemed to have been reasonably notified by the filing of the buyer's complaint alleging breach of the UCC warranty." *Id.* at 589. The second exception only applies when the buyer alleges a personal injury as a result of breach. *Id.* at 591. Because Terrazzino has not alleged a personal injury, that exception does not apply here. Instead, Terrazzino argues that the first exception applies—she contends that Walmart had actual knowledge that the Pita Chips were not natural, and therefore direct pre-suit notice was unnecessary.

But nowhere in the complaint does Terrazzino allege that Walmart had actual knowledge that its Pita Chips were not all natural. Terrazzino only makes two allegations as to Walmart's knowledge. First, she alleges that Walmart knew that consumers would purchase the Pita Chips because they were labeled "All Natural" and pass over similar products that were not so labeled. (Compl. ¶ 40.) And second, she alleges that Walmart knew consumers bought the Pita Chips with the expectation that they would be free of any artificial or synthetic ingredients. (Compl. ¶ 85.) Neither of these allegations is sufficient to state a claim of Walmart's actual knowledge that its product contained a defect—namely, that its Pita Chips were not all natural. Because Terrazzino failed to provide pre-suit notice and has not demonstrated an applicable exception, her breach of warranty claim (Count I) is dismissed without prejudice.

### C. Unjust Enrichment

Walmart argues that Terrazzino's unjust enrichment claim should be dismissed because it is simply a restated breach of contract claim. But "unjust enrichment is based on an implied contract, where there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application." *People ex rel. Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 177 (Ill. 1992). The Federal Rules of Civil Procedure allow pleading of alternative statements of a claim. Fed. R. Civ. P. 8(d). And Terrazzino is entitled to plead unjust enrichment as an alternative to her breach of contract claim. Accordingly Walmart's motion to dismiss the unjust enrichment claim is denied.[2]

### D. Injunctive Relief

Finally, Walmart argues that injunctive relief is unavailable to Terrazzino in this action. Terrazzino seeks to "enjoin[] Defendant's unlawful actions." (Compl. ¶102). To state a claim for injunctive relief, plaintiff must allege that a defendant's conduct is likely to cause her harm in the future. *Camasta*, 761 F.3d at 740. Notably, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974). Terrazzino is now aware that the Pita Chips at issue here are not "All Natural," as described on the label. Therefore, she is not likely to be harmed by the "All Natural" misrepresentation in the future—she will simply avoid buying those Pita Chips. *See Camasta*, 761 F.3d at 740 ("Since Camasta is now aware of JAB's sales practices, he is not likely to be harmed by the practices in the future."). Because Terrazzino has failed to allege that it is reasonably likely that she will be harmed again in the future, her claim for injunctive relief is dismissed.

---

[2] Alternatively, Walmart argued that the unjust enrichment claim was tied to the ICFA claim—if the ICFA claim failed so too should the unjust enrichment claim. The ICFA claim was not dismissed by the Court, and therefore this argument is moot.

## CONCLUSION

For the foregoing reasons, Walmart's motion to dismiss (Dkt. No. 13) is granted in part and denied in part. Specifically, the motion is granted with respect to Terrazino's claim for breach of express warranty in Count I and her request for injunctive relief; those claims are dismissed without prejudice. The motion to dismiss is otherwise denied.

ENTERED:

Dated: August 16, 2018

Andrea R. Wood
United States District Judge